NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____ :
                                    :
DAVID BEASLEY,                      :       Civ. Action No. 22-585 (RMB)
                                    :
              Petitioner            :
                                    :
       v.                           :       **OPINION**
                                    :
WARDEN LAMINE N'DIAYE,              :
                                    :
              Respondent.           :
_____ :

**BUMB, Chief United States District Judge**

This matter comes before the Court upon Petitioner David Beasley's ("Petitioner") petition for a writ of habeas corpus ("Petition") under 28 U.S.C. § 2241 (Pet., Docket No. 1), alleging due process violations in connection with a prison disciplinary hearing in the Federal Bureau of Prisons ("BOP"), FCI Fort Dix. Also before the Court is Respondent's answer in opposition to habeas relief (Answer, Docket No. 4), Petitioner's reply brief (Reply Brief, Docket No. 5), and Petitioner's motion for an expedited judgment. (Motion for Expedited Judgment, Docket No. 8.) For the reasons set forth below, the Court denies the petition for writ of habeas corpus and denies the motion for expedited judgment as moot.

## I.   RELEVANT BACKGROUND

### a.  The Incident Report

David Beasley is presently incarcerated at FCI Fort Dix and was incarcerated at FCI Fort Dix at the time of the incident in question. (*See* Declaration of Corrie Dobovich ("Dobovich Decl."), Attachment A (Public Information Inmate Data), Docket No. 4-5 at 1-4.) On February 2, 2021, staff at FCI Fort Dix issued Beasley Incident Report #3471199 that charged him with possession of a hazardous tool, a violation of BOP Disciplinary Code 108.2. (*See* Declaration of Jermaine Darden ("Darden Decl."), Exhibit 1 (DHO Packet), Docket No. 4-3 at 7-8.) The incident report stated:

> On 2/2/2021, at approximately 1:45pm, I, SIS Tech J. Suero, was screening inmate property in the Food Service Warehouse (pallet scanner), when I observed what appeared to be two electronic devices inside an inmate property bag on the x-ray machine screen. I then pulled the bag to the side and conducted a search of the bag that had the two electronic devices. During the search of the bag, I located 1-black Samsung cell phone concealed inside a chunk light tuna package, 1- white L8STAR cell phone concealed inside a fillet of mackerel package and 1-black Samsung cell phone charger inside a Berry Colossal Crunch cereal bag. I also located an inmate personal property record receipt with inmate Beasley, David reg. no. 11689-026 on it. After searching inmate Beasley on Web Sentry, I was able to positively identify inmate Beasley, David reg. no. 11689-026 as an inmate who was moved from Unit 5712 to 5812 (G03-193L to Q03-122L) on 2/2/2021 (today) at 9:39 am and had his property sent to the pallet scanner to be screened.

(*Id.* at 7.)

BOP staff delivered the incident to Beasley at 6:51 p.m. that day. (*See id.*) At that time, staff advised Beasley of his right to remain silent during the disciplinary process. (*See id.* at 8.) Beasley stated that he had "nothing to say" in response to the charges, and did not request any witnesses or a staff representative. (*See id.*)

**b. UDC Review**

The investigating officer referred the incident report to the unit discipline committee ("UDC") for an initial hearing. (*See id.*) The next day, on February 3, 2021, the UDC convened for an initial hearing on Beasley's incident report. (*See id.* at 7.) Beasley stated, "I only had 3 bags. There's no way that could be my bag. We packed our property in the hallway of 5712. Anything could have happened." (*Id.*) At the conclusion of the hearing, the UDC referred the incident report to a DHO for final disposition based on the seriousness of the charged offense. (*See id.*)

On the same date, Beasley received a "Notice of Discipline Hearing Before the DHO," which informed him that he would have a hearing before the DHO on the charge in the incident report. (*See id.* at 10.) On the form, Beasley indicated that he did not want to request a staff representative but that he would like to call two inmates, Jacob Silva and Kenneth Reynolds, to provide testimony on his behalf. (*See id.*) Beasley also signed the form. (*See id.*)

In addition, Beasley signed the "Inmate Rights at Discipline Hearing" form, acknowledging that staff had advised him of the rights he possessed in connection with the disciplinary hearing, including: (1) the right to receive a written copy of the charges at least 24 hours prior to the hearing; (2) the right to have a staff member who is reasonably available to serve as a staff representative; (3) the right to call witnesses, present witness statements, and introduce evidence, "provided institutional safety would not be jeopardized"; (4) the right to present a statement or remain silent; (5) the right to appear throughout the hearing; (6) the right to receive written notice of the DHO's decision and

3

the facts supporting the decision; and (7) the right to appeal the DHO's decision through the administrative remedy process. (*See id.* at 9.)

### c.  The DHO Hearing

On February 11, 2021, Beasley appeared before the DHO for his disciplinary hearing. (*See id.* at 1.) Beasley again waived his right to request a staff representative, said that he understood his rights before the DHO, and raised no issues about the disciplinary process. (*See id.*) Beasley also denied the charges, and the DHO summarized his testimony as follows:

> You stated, "I am not guilty, that morning I packed three large bags of my personal property, so I sat my bags on the first floor of the building. Other inmates were moving bags and placing them on the carts. I went over with the first group of inmates to the west side. I did not get my bags until later that day. Someone had to have placed those cell phones there. That bag did not belong to me."

(*Id.* at 3.)

The DHO also heard from the two witnesses Beasley requested. (*See id.* at 2.) Inmate Jacob Silva testified as follows: "We are not friends[.] I have nothing to gain from my testimony. I lived in the room with him and helped to pack his bags. We packed three bags, and his bags were left in 5712 unattended. [A]nyone could have placed anything in those bags." (*Id.*) Inmate Kenneth Reynolds testified as follows: "I packed my property a few days before, I was watching the room pack up. Mr. Beasley was packing his bags a total of three bags were left unattended." (*Id.*)

In addition to Beasley's statement, the testimony of the two witnesses, and the incident report prepared by J. Suero, the DHO considered photographs of the recovered

cell phones and cell phone charger, the inmate personal property record sheet for Beasley's property, a chain of custody form, and SENTRY, which reflected Beasley's housing assignments, as part of his review. (*See id.* at 2-5; *see also* Dobovich Decl., Attachment D (SENTRY Inmate History/Quarters), Docket No. 4-5 at 44.)

### d. The DHO Decision

At the conclusion of the hearing, the DHO determined that Beasley committed the prohibited act of possession of a hazardous tool, in violation of Code 108. (*See* Darden Decl., Exhibit 1, ECF No. 4-3 at 5-6.) In particular, the DHO stated:

> The DHO considered your statement and the statements of your inmate witnesses, and denial of committing the prohibited act described in Section 11, however [the DHO] feels you are providing the DHO with some inaccurate information in order for you [to] not accept responsibility for your actions. You were not able to provide the DHO with any significant evidence to corroborate your claim [that] the reporting staff members provided a false statement or [were] not being truthful in reference to you[r] possession a hazardous tool, as reported in the section 11 narrative of the incident report and photo of the hazardous tool. Based upon the reporting staff members' eyewitness account of your behavior, your observed/reported behavior/actions met the threshold for possession of a hazardous tool as described above. The DHO gave greater weight to the staff members' eyewitness account of the incident. Based on the evidence submitted in reference to this incident report, your reported actions met the threshold for possession of hazardous tool phone as described above.

*Id.* The DHO further noted that "[i]t is each inmate's responsibility to ensure their assigned area is free of any unauthorized items, and/or damaged government property" and that "[a]ny unauthorized items, and/or damaged government property should be immediately reported to staff; or the inmate(s) will be held accountable for such items if discovered by

staff." (*Id.*) Based on all the evidence before him, the DHO concluded that Beasley committed the prohibited act of possessing a hazardous tool. (*See id.* at 5-6.)

As a result of this determination, the DHO imposed the following sanctions: (1) disallowance of 41 days' good conduct time; (2) a monetary fine of $250; and (3) loss of phone privileges for 365 days. (*See id.* at 6.) The DHO explained that he imposed these sanctions because Beasley's conduct "significantly threatened the health, safety, and welfare of" himself and others, that past evidence had shown that the disruptive conduct had led to serious damage to the institution, as well as serious injury to staff and inmates involved, and that the sanctions would show Beasley "that he would be held responsible for his actions/behaviors at all times." (*Id.*) Beasley received a copy of the DHO report, which advised him of his right to appeal, on March 11, 2021. (*See id.*)

### e. Exhaustion

According to BOP records, in July 2021, Beasley filed a BP-10 Regional Administrative Remedy Appeal that challenged the outcome of his disciplinary hearing, arguing that the property remained outside his possession and control for more than eight hours and that the BOP should not hold him responsible for the recovered cell phones. (*See* Dobovich Decl., Attachment C (Administrative Remedy Requests/ Response), ECF 4-5 at 14-16.)  The Northeast Regional Director denied the BP-10 on September 27, 2021, stating that the DHO "reasonably determined [Beasley] committed the prohibited act" of possessing the cells phone, that a review of the hearing record "revealed no due process concerns or deviations from policy," and that the "sanctions imposed were consistent with the severity level of the prohibited act. (*Id.*)

Beasley appealed this response to BOP's Central Office, and on February 9, 2022, the BOP's Administrator of National Inmate Appeals denied the appeal, again finding that Beasley received due process during the disciplinary hearing and that the evidence supported the DHO's decision.[1] (*See id.* at 1-3.)

## II.   **DISCUSSION**

### a.  **The Parties' Arguments**

Beasley argues that BOP improperly penalized him for possessing the cell phones and failed to provide him with due process in connection with his DHO hearing. (*See* Pet. Mem. at 3-15.) In particular, Beasley contends that (1) BOP staff did not conduct a proper investigation because they failed to interview other witnesses and have the FBI conduct a forensic analysis of the cell phones. (*See* Pet. Mem. at 11-12.)  He further contends that (2) the DHO was not an impartial decision-maker and was biased in favor of BOP staff. (*See id.*) Beasley also argues that (3) the DHO's decision is not supported by sufficient proof

---

[1] BOP has established a four-step process for federal inmates to exhaust administrative remedies. *See* 28 C.F.R. § 542.10 et seq. To comply with this process, an inmate generally must first attempt to informally resolve his dispute with prison staff. *See* 28 C.F.R. § 542.13. If these efforts fail, the inmate must then submit an administrative remedy request to the warden of his institution within twenty days of the event or decision underlying the request. *See* 28 C.F.R. § 542.14(a), (c). If the administrative remedy request is denied, the inmate must then file an appeal with the appropriate Regional Director within twenty days of the date of the warden's response. See 28 C.F.R. § 542.15(a). If the Regional Director denies the appeal, the inmate must then appeal that decision to BOP's Central Office, General Counsel, within thirty days from the date of the Regional Director's response. *See id.* In this case, because Beasley was challenging the outcome of a disciplinary hearing, he could skip the first two steps of this process and appeal directly to the Regional Director. *See* 28 C.F.R. § 542.14(d)(2).

because the evidence does not demonstrate that he had possession of the recovered cell phones. (*See* Pet. Mem. at 6-9.)

The government argues that Beasley's claims are without merit. With respect to the investigation, the government argues that BOP staff were not required to locate witnesses that Petitioner did not identify or conduct a forensic analysis of the cell phones. (Res. Brief at 8-14.) The government also argues that Beasley cannot show he was prejudiced by the failure to call additional witnesses or conduct the forensic analysis of the cell phones. (*Id.*) The government also argues that Beasley's claims of bias are conclusory and without any support. (*Id.*) Finally, the government argues that the evidence at Beasley's hearing satisfied the minimal standard of proof required to uphold the DHO's conclusions. (Res. Brief at 15-17.)

**b. Legal Standard**

In *Wolff v. McDonnell*, the Supreme Court described the minimum due process required before an inmate may be sanctioned with loss of good-time credits for violating a prison rule. 418 U.S. 539, 563-71 (1974). The due process protections include (1) written notice of the charges at least twenty-four hours prior to a hearing; (2) an opportunity to call witnesses and present evidence in defense; (3) opportunity to receive assistance from an inmate representative; (4) a written statement of the evidence relied on and reasons for the disciplinary action; and (5) an appearance before an impartial decision-making body. *Wolff*, 418 U.S. at 563–567. The Supreme Court later held that "some evidence" is the standard of review required to affirm an inmate's finding of guilt of a prison rule infraction. *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985).

"Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* The standard is met if any evidence in the record could support the conclusion by the tribunal. *Id.* at 455-56.

The BOP regulations for prison disciplinary proceedings exceed the minimum due process provided in *Wolff. See* 28 C.F.R. §§ 541.1 to 541.8; *see Von Kahl v. Brennan*, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994) ("While the regulations substantially track the procedures outlined in *Wolff*, in some respects they go beyond what the due process clause itself requires.") (internal citations omitted). Under 28 C.F.R. § 541.5, when BOP staff have reason to believe that an inmate committed a prohibited act, the BOP must prepare an incident report and refer the matter for investigation. After an investigation, the incident report is provided to a Unit Discipline Committee pursuant to 28 C.F.R. § 541.7, for an initial hearing. A DHO hearing must be conducted pursuant to the procedures set forth at 28 C.F.R. § 541.8. The procedures require the BOP to give inmates advance written notice of the charges no less than 24 hours before the DHO hearing. 28 C.F.R. § 541.8(c). Inmates are entitled to the assistance of a staff representative for the DHO hearing. 28 C.F.R. § 541.8(d). The inmate has the right to be present throughout the DHO hearing, except during deliberation or when institutional security would be jeopardized. 28 C.F.R. § 541.8(e).

In a DHO hearing, the inmate is entitled to make a statement, present documentary evidence, and submit names of requested witnesses and have them called to testify, if reasonably available. 28 C.F.R. § 541.8(f). Once the DHO renders a decision, the DHO

must prepare a record of the proceedings. The record of proceedings must be sufficient to document that the inmate was advised of his rights, the DHO's findings, the specific evidence relied upon by the DHO, the sanctions imposed, the reasons for the DHO's decision and for the sanctions imposed, and the record must be delivered to the inmate. 28 C.F.R. § 541.8(h).

## III.   ANALYSIS

### a. Whether DHO Staff Conducted an Adequate Investigation

Beasley first alleges that BOP staff deprived him of due process because they did not perform an adequate investigation. (*See* Pet. Mem. at 11-12.) In particular, Beasley contends that the lieutenant who issued the report should have interviewed other witnesses and asked the FBI to conduct a forensic analysis of the cell phones. (*See id.*) A thorough investigation is not a requirement of due process in the prison disciplinary setting. *See Moles v. Holt*, 221 F. App'x. 92, 96 (3d Cir. 2007) ("We note that a failure to conduct a prompt and thorough investigation prior to a disciplinary hearing does not rise to the level of a due process violation."). An inmate has a right to present relevant and available evidence at the disciplinary hearing, *Burns v. Pa. Dept. of Corr.*, 642 F.3d 163, 174 n. 11 (3d Cir. 2011); however, "in the absence of a timely request by an inmate for the presentation of such evidence, there is no general affirmative obligation on the part of prison officials to ferret out this proof." *Spotts v. Holt*, No. 3:11-CV-1880, 2015 WL 4219751, at *7 (M.D. Pa. July 10, 2015) (report and recommendation of magistrate judge and order adopting such report and recommendation).

Despite Beasley's contentions, 28 C.F.R. § 541.5(b) does not require the investigator to interview any witnesses that may have information about the incident. Rather, it states that the investigator will inform the inmate of the charges, advise him that he may remain silent, and ask the inmate if he wants to make a statement – at which time, the regulation states, the inmate "may give an explanation of the incident, request any witnesses be interviewed, or request that other evidence be obtained and reviewed." 28 C.F.R. 541.5(b)(1)-(2). Here, there is no indication that Beasley asked the lieutenant to interview witnesses when he delivered the incident report. (*See* Darden Decl., Exhibit 1, Docket No. 4-3 at 8.)

In any event, whether or not the lieutenant interviewed the witnesses, Beasley cannot demonstrate prejudice based on this alleged omission, as the two inmates Beasley requested gave testimony at the hearing and the DHO considered their testimony when he determined that Beasley committed the prohibited offense. *Cf. Hotton v. Ortiz*, No. 17-7742 (NLH), 2020 WL5758006, at *6 (D.N.J. Sept. 28, 2020) (in case where petitioner challenged discipline based on DHO's denial of request to present witnesses, petitioner failed to show prejudice because witnesses provided statements that the DHO considered). Moreover, Beasley has not provided any evidence that there are any additional witnesses who could have exonerated him.

Beasley also cannot show a due process violation based the BOP's failure to submit the cell phones for forensic analysis. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. The Supreme Court has held that an inmate facing

the loss of good-time credits has a due process right to "present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.* at 566; *see also Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991). "Although prison officials are afforded deference regarding whether evidence might be unduly hazardous or undermine institutional safety or correctional goals, 'the discretion afforded prison officials is not without limits.'" *Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 173 (3d Cir. 2011) (quoting *Young*, 926 F.2d at 1400). Thus, courts typically require prison officials to "determine whether there are legitimate penological reasons to deny the prisoner access to the evidence requested." *Id.* at 174.

Beasley cites to *Jacquet v. Warden Fort Dix FCI*, 707 F. App'x. 124, 128 (3d Cir. 2017) for the proposition that he is entitled to forensic testing as part of an adequate BOP investigation.  In *Jacquet*, the prisoner argued that the BOP violated his due process rights "by denying his request to obtain hair-testing evidence at his own expense." *Id.* at 127–28. Jacquet <u>requested</u> hair follicle testing to show that his drug test was a false positive, but the BOP denied this request without explanation. *See id.* at 128 (vacating and remanding for the District Court to determine whether the BOP had a legitimate basis to deny Jacquet access to secondary testing). Unlike *Jacquet*, Beasley did not <u>request</u> forensic testing to be conducted at his own expense. Instead, he contends that the BOP had an obligation to conduct forensic testing as part of its own independent investigation, which is simply untrue.

Moreover, as the government points out, such testing would not have exonerated Beasley on the relevant charge. As this Court has explained, "*Wolff* does not . . . guarantee

prisoners the unfettered right to call any witness or present any evidence they wish regardless of its relevance or necessity." *Manfredi v. United States*, No. 12- 1905 (RMB), 2012 WL 5880343, at *6 (D.N.J. Nov. 20, 2012) (collecting cases). To the contrary, the Third Circuit has held that inmates do not have an absolute right to conduct evidentiary analysis in connection with a disciplinary hearing.  *See Jacquet*, 707 F. App'x at 128 (noting that "prison officials are afforded deference regarding whether evidence might be unduly hazardous or undermine institutional safety or correctional goals" and can deny such a request for "legitimate penological reasons");*Garrett v. Smith*, 180 F. App'x 379, 381 (3d Cir. 2006) (in case where inmate sought an expert to analyze tape used at disciplinary hearing, court found "no authority . . . establish[ing] a due process right to have the prison find, retain, and present an expert witness on the prisoner's behalf"); *see also Bacon v. Ortiz*, No. 19-11023 (NLH), 2021 WL 1138137, at *6 (D.N.J. Mar. 25, 2021) (rejecting due process claim based on failure to conduct forensic cell phone analysis).

The Third Circuit considered a similar situation in *Donahue v. Grondolsky*, 398 F. App'x. 767 (3d Cir. 2010). In *Donahue*, a SIM Card was found taped to the back of an inmate's locker, leading BOP staff to charge the inmate with possession of a hazardous tool. The inmate contended that the BOP should have investigated the contents of the SIM card and determined which phone numbers were attached to it. *See id.*at 770. The district court denied the petition and held that the failure to investigate or disclose the contents of the SIM card did not violate due process. The Third Circuit agreed, concluding that, even if the inmate had timely requested the contents of the SIM card, the contents could not have exonerated him because he was charged with mere possession of the item. *See id.*at

772 ("identifying the true owner of the SIM card (assuming it was not Donahue) by verifying the cellular phone number assigned to it and/or revealing the list of calls made and received would not have exonerated Donahue of possession of contraband");*see also Bacon*, 2021 WL 1138137, at *6 (rejecting claim that DHO should have conducted forensic test for, "even a timely request would have been immaterial because the possession of the contraband, not its ownership, was the only relevant consideration").

Here too, Beasley was charged with possession of a hazardous tool under circumstances where testing of the items would not have exonerated him. The Court agrees with the government that Beasley cannot show that a forensic search of the cell phones would have provided exculpatory evidence, and he may not obtain habeas relief on this ground.

In his reply brief, Beasley belatedly claims that BOP staff should have investigated his commissary purchases to determine whether he bought the food items in which the cell phone and charger were hidden. (Docket No. 5, Pet. Reply Brief at 4-5.) Beasley further claims his commissary receipts from January 2021 show that he did not purchase those items in the weeks leading up to the incident. (*Id.*) Beasley does not explain why he did not ask BOP staff to obtain this information prior to his DHO hearing. Nevertheless, the fact that he did not purchase the food items in January 2021 does not exonerate him as he could have acquired the food items at an earlier date or from another inmate. As such, this argument also does not entitle him to relief.

### b. Whether the DHO was Biased

Petitioner next contends that it is not possible for a DHO to be partial when called upon to review the allegations made by his or her BOP colleagues. This claim falls short of establishing a due process violation. The Third Circuit has explained that "the requirement of an impartial tribunal prohibits only those officials who have a direct personal or otherwise substantial involvement . . . in the circumstances underlying the charge from sitting on the disciplinary body[.]" *Greer v. Hogston*, 288 F. App'x 797, 799 (3d Cir. 2008) (quoting *Meyers v. Alldredge*, 492 F.2d 296, 306 (3d Cir.1974)).

Here, Beasley does not allege that the DHO was involved at all in the circumstances underlying his offense; he merely claims that the DHO could not be impartial because he worked as a corrections officer at FCI Fort Dix and "remains affiliated with his correctional officer colleagues," including the officer who found the cell phones. (Docket No. 1-4, Pet Mem. at 13.) This allegation falls far short of the showing necessary to establish DHO bias. Because Beasley has not identified any improper involvement on the part of the DHO, he cannot demonstrate that he was denied an impartial tribunal. *See Lewis v. Canaan*, 664 F. App'x 153, 156 (3d Cir. 2016) (inmate's "claim of general bias" did not indicate the type of "direct personal or otherwise substantial involvement . . . in the circumstances underlying the charge" that could show the DHO was not impartial); *Edwards v. Yates*, No. 15-5780 (ES), 2016 WL 6562048, at *9 (D.N.J. Nov. 4, 2016) ("In the absence of a showing that the hearing officer was "personally or substantially involved in the circumstances underlying [the investigation of the] charge," . . . courts generally decline to sustain due process challenges to disciplinary decisions on claims of staff

15

bias");*Rodriguez v. Ebbert*, No. 3:15-CV-1815, 2016 WL 3457175, at *3 (M.D. Pa. June 20, 2016) ("'generalized critique' of [DHO] impartiality is insufficient to demonstrate the degree of bias necessary to prove a due process violation").

In his reply brief, Beasley argues that the DHO demonstrated bias when stating that he gave greater weight to the reporting staff member's account of the incident, and referenced the reporting staff member's account of Beasley's "behavior" and "actions." (Docket No. 5, Pet. Reply at 3-4.) Beasley points out that his behavior and actions were not witnessed by the reporting staff member. (*See id.*) The use of imperfect language does not equate to bias. Although the DHO decision could have been more precise, it is clear that the DHO credited the staff member's statement that he found the cell phones and charger in a bag that also contained a property receipt with Beasley's name on it, and the DHO discredited Beasley's denial of ownership of the bag and his suggestions that the reporting staff member was lying and/or that another inmate had placed the cellphones in the bag. Therefore, the Court denies relief on this issue and turns to Petitioner's next claim.

### c. Whether "Some Evidence" Supports the DHO's Decision

Beasley argues that the DHO's decision is not supported by sufficient proof because the evidence does not demonstrate that he had possession of the recovered cell phones. *See* Docket No. 1-4, Pet. Mem. at 6-9.) The standard of proof required to uphold a DHO's finding is very low – it must only be supported by "some evidence." *Hill*, 472 U.S. at 447. This "minimal" standard "does not require a reviewing court to exam[ine] the entire record, independently assess the credibility of witnesses, or even weigh the evidence."

*Cardona v. Lewisburg*, 551 F. App'x 633, 637 (3d Cir. 2014) (citing *Hill*, 472 U.S. at 455).

"Instead, the relevant question is whether there is any evidence in the record that could

support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56; *see also*

*Denny v. Schultz*, 708 F.3d 140, 145 (3d Cir. 2013) ("[A] reviewing court need only find

that the DHO's decision had 'some basis in fact' in order to affirm the decision as

comporting with the Due Process Clause.") (quoting *Hill*, 472 U.S. at 456); *Visintine v.*

*Zickefoose*, No. 11-4678 (RMB), 2014 WL 4388609, at *14 (D.N.J. Sept. 5, 2014) (noting

that the "some evidence" standard is violated only when a disciplinary sanction is imposed

without "any" factual basis).

Beasley argues that the DHO conclusions are erroneous because Beasley did not

have actual physical possession of the recovered cell phones, and the doctrine of

constructive possession is inapplicable. "In general, a person has constructive possession

if he knowingly has ownership, dominion, or control over the contraband itself or over the

premises in which the contraband is located." *United States v. McKnight*, 953 F.2d 898, 901

(5th Cir.1992). The Third Circuit has recognized that the doctrine of constructive

possession applies in the disciplinary context. In *Santiago v. Nash*, 224 F. App'x 175, 177

(3d Cir. 2007), an inmate brought a § 2241 petition challenging the loss of good conduct

time where he was found guilty of possession of a hazardous tool after a guard found a

tattoo gun needle taped to the frame of the inmate's bunk. At the disciplinary hearing, the

inmate denied knowledge of the needle and claimed there was insufficient evidence to find

that he possessed the needle. The Third Circuit rejected this argument and found that "in

the absence of direct evidence indicating an inmate's guilt of possession, the 'some

evidence' standard may be satisfied by application of the constructive possession doctrine in limited circumstances where a small number of inmates are potentially guilty of the offense charged." *Id.* at 177 (citing *White v. Kane*, 860 F. Supp. 1075, 1079 n. 5 (E.D. Pa. 1994), aff'd, 52 F.3d 319 (3d Cir.1995); *see also Solomon v. Warden, FCI Fairton*, 506 F. App'x. 147, 149 (3d Cir. 2012) (finding that there was some evidence that prisoner possessed cell phone found in his work area, where he was one of three orderlies with access).  In a subsequent decision, the Third Circuit rejected the inmate's sufficiency of the evidence claim where a SIM card was taped to the back of the inmate's clothes drawer, even though the inmate shared a cell with three other inmates and numerous inmates assigned to his dorm could have had access to his area. *See Donahue v. Grondolsky*, 398 F. App'x. 767, 772–73 (3d Cir. 2010); *see also White v. Kane,* 860 F. Supp. at 1079, *aff'd,* 52 F.3d 319 (3d Cir. 1995) (plaintiff's cell was unlocked while he was out at his work assignment; thus, every prisoner on plaintiff's cell block theoretically had access to plaintiff's cell); *Compare Broussard v. Johnson*, 253 F.3d 874, 877 (5th Cir. 2001) (where the only evidence that petitioner possessed bolt cutters was the fact that they were found in the kitchen where he worked, to which 100 inmates had access, the evidence was insufficient to satisfy "some evidence" standard).

Petitioner contends that the constructive possession doctrine does not apply because there were approximately 40 inmates in the area where the bag containing the cell phones was left unattended. Petitioner's argument minimizes the fact that the cell phones were discovered in a bag that also contained a property record receipt with his name and register number. Thus, although the cell phones and charger were not found on Beasley's

person or in his cell, these items were found in a bag of inmate property that contained a property receipt with his name and register number, which went through the X-ray scanner during the time Beasley transferred housing assignments. The property receipt is sufficient to establish Plaintiff's control or ownership of the bag, and, thus, the cell phones and charger hidden in the bag. Under these circumstances, the Court finds that the DHO had "some evidence" that Beasley possessed the cell phones.

Beasley's allegation that he had thrown out the property receipt in question and his speculation that someone else could have put the cell phones in the bag do not undermine the DHO's conclusions. *See, e.g., Jackson v. Ortiz*, No. 19-10957 (RMB), 2020 WL 1466804, at *5 (D.N.J. Mar. 26, 2020) (denying habeas relief because petitioner's "defense that the contraband could have been planted was unsupported speculation").

For these reasons, the Court denies relief on the sufficiency of the evidence claim.

## IV.   <u>CONCLUSION</u>

For the reasons discussed above, the Court denies the habeas petition (Docket No. 1).  Having denied the petition, the Court denies the motion for expedited judgment (Docket No. 8) as moot. An appropriate Order follows.

Date: May 30, 2023.

> s/Renée Marie Bumb
> **RENÉE MARIE BUMB**
> **CHIEF UNITED STATES DISTRICT JUDGE**